1  Dawniell Zavala (State Bar No. 253130)
   HOLME ROBERTS & OWEN LLP
2  560 Mission Street, 25th Floor
   San Francisco, CA 94105-2994
3  Telephone:  (415) 268-2000
   Facsimile:  (415) 268-1999
4  Email:  dawniell.zavala@hro.com
5
6  Attorneys for Plaintiffs,
   SONY BMG MUSIC ENTERTAINMENT;
7  UMG RECORDINGS, INC.; WARNER
   BROS. RECORDS INC.; and BMG MUSIC
8

**E-filing**

9              UNITED STATES DISTRICT COURT
10            NORTHERN DISTRICT OF CALIFORNIA
11            _____ DIVISION

**BZ**

12 SONY BMG MUSIC ENTERTAINMENT, a      CASE NO.
   Delaware general partnership; UMG
13 RECORDINGS, INC., a Delaware corporation;   **CV 08     3994**
   WARNER BROS. RECORDS INC., a Delaware    **MEMORANDUM OF LAW IN SUPPORT**
14 corporation; and BMG MUSIC, a New York   **OF APPLICATION FOR LEAVE TO TAKE**
   general partnership,                     **IMMEDIATE DISCOVERY**
15
16              Plaintiffs,
17
         v.
18
19 JOHN DOE,
                Defendant.
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiffs, record companies who own the copyrights in the most popular sound recordings in the United States, seek leave of the Court to serve limited, immediate discovery on a third party Internet Service Provider ("ISP") to determine the true identity of Defendant, who is being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot identify the Defendant, and thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement.[1]

As alleged in the complaint, the Defendant, without authorization, used an online media distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works and/or distribute copyrighted works to the public. See Declaration of Carlos Linares ("Linares Decl."), ¶ 18 (attached hereto as **Exhibit A**). Although Plaintiffs do not know the true name of the Defendant,[2] Plaintiffs have identified Defendant by a unique Internet Protocol ("IP") address assigned to the Defendant on the date and at the time of the Defendant's infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activities. Id. ¶¶ 14-15, 19. Plaintiffs have downloaded a sample of several of the sound recordings that Defendant illegally distributed and have evidence of every file that Defendant illegally distributed to the public. Id.

Plaintiffs have identified the ISP that provided Internet access to Defendant by using a publicly available database to trace the IP address for Defendant. Id. ¶¶ 12, 18. Here, the ISP is University of California, Santa Cruz ("UC Santa Cruz"). Id. When given a Defendant's IP address and the date and time of infringement, an ISP typically can identify the name and address of the Defendant (*i.e.,* the ISP's subscriber) because that information is contained in the ISP's subscriber activity log files. Id. ¶ 16.[3] Plaintiffs' experience is that ISPs typically keep log files of subscriber

---

[1] Because Plaintiffs do not currently know the identity of the Defendant, Plaintiffs cannot ascertain any of the Defendant's position on this Application.

[2] When using a P2P system (*e.g.*, Ares, eDonkey, Gnutella, BitTorrent, or DirectConnect), Defendants typically use monikers, or user names, and not their true names. Linares Decl., ¶ 10. Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information from the ISP. Id. ¶¶ 10, 16.

[3] ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a

1

1  activities for only limited periods of time – which can range from as short as a few days, to a few

2  months – before erasing or overwriting the data they maintain.  Id. ¶ 25.  Plaintiffs alert the ISP to

3  the existence of the copyright claims shortly after identifying the infringing activity and ask the ISP

4  to maintain the log files.  In most cases the ISP presents at least some of the information necessary to

5  identify the infringer, but not always.  Id.

6  Plaintiffs now seek leave of the Court to serve limited, immediate discovery on UC Santa

7  Cruz to identify Defendant.  Plaintiffs intend to serve a Rule 45 subpoena on UC Santa Cruz seeking

8  documents, including electronically-stored information, sufficient to identify Defendant's true name,

9  current (and permanent) addresses and telephone number, e-mail address, and Media Access Control

10  ("MAC") address.  If UC Santa Cruz cannot link the IP address to Defendant, Plaintiffs seek all

11  documents and electronically-stored information relating to the assignment of that IP address at the

12  date and time the IP address was used to infringe Plaintiffs' copyrighted sound recordings.  Once

13  Plaintiffs learn Defendant's identifying information, Plaintiffs will attempt to contact that Defendant

14  and attempt to resolve the dispute.  If the dispute is not resolved and it is determined that it would be

15  more appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs will

16  dismiss the Defendant from the present lawsuit and re-file in the appropriate jurisdiction.  Without

17  the ability to obtain the Defendant's identifying information, however, Plaintiffs may never be able

18  to pursue their lawsuit to protect their copyrighted works from repeated infringement.  Id. ¶ 23.

19  Moreover, the infringement may be ongoing and computer evidence may be overwritten or

20  destroyed such that immediate relief is necessary.  Id. ¶¶ 21, 24.  Thus, the need for the limited,

21  immediate discovery sought in this Application is critical.

22  **II.    BACKGROUND**

23  The Internet and P2P networks have spawned an illegal trade in copyrighted works.  See

24  MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 923 (U.S. 2005).  By downloading P2P software,

25  and logging onto a P2P network, an individual can upload (distribute) or download (copy), without

26

27  particular IP address in its block or range to the subscriber when that subscriber goes "online."  After

28  reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify
its subscribers by name.  See Linares Decl., ¶ 16.

2

1    authorization, countless copyrighted music and video files to or from any other P2P network user

2    worldwide. See id. at 920 (detailing the process used by infringers to download copyrighted works);

3    A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014 (9th Cir. 2001) (stating that infringers use

4    P2P networks to copy and distribute copyrighted works); Universal City Studios, Inc. v. Reimerdes,

5    111 F. Supp. 2d 294, 331 (S.D.N.Y.), aff'd sub nom., Universal City Studios, Inc. v. Corley, 273

6    F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made

7    available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until

8    enjoined, Napster was the most notorious online media distribution system. Grokster, 545 U.S. at

9    924. Notwithstanding the Napster Court's decision, similar online media distribution systems

10   emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These

11   include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect, and Gnutella, among others. Linares

12   Decl., ¶ 6. Despite the continued availability of such systems, there is no dispute that the uploading

13   and downloading of copyrighted works without authorization is copyright infringement. Napster,

14   239 F.3d at 1014-15; In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003), cert. denied, 124

15   S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of people illegally use online media

16   distribution systems to upload or download copyrighted material. Linares Decl., ¶ 6. More than 2.6

17   *billion* infringing music files are downloaded monthly. L. Grossman, *It's All Free*, Time, May 5,

18   2003, at 60-69.

19       The propagation of illegal digital copies over the Internet significantly harms copyright

20   owners, and has had a particularly devastating impact on the music industry. Linares Decl., ¶ 9. The

21   RIAA member companies lose significant revenues on an annual basis due to the millions of

22   unauthorized downloads and uploads of well-known recordings that are distributed on P2P networks.

23   Id. ¶ 9. Evidence shows that the main reason for the precipitous drop in revenues is that individuals

24   are downloading music illegally for free, rather than buying it. See In re Aimster Copyright Litig.,

25   334 F.3d at 645.

26   **III.   ARGUMENT**

27       Courts routinely allow discovery to identify "Doe" defendants. See Wakefield v. Thompson,

28   177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that

3

1   identity could be ascertained through discovery); Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir.

2   1997) (vacating dismissal; *pro se* plaintiff should have been permitted to conduct discovery to reveal

3   identity of the defendant); Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny the

4   plaintiff's motion to join John Doe defendant where identity of John Doe could have been

5   determined through discovery); Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss

6   claim merely because the defendant was unnamed; "Rather than dismissing the claim, the court

7   should have ordered disclosure of the Officer Doe's identity"); Maclin v. Paulson, 627 F.2d 83, 87

8   (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been

9   permitted to obtain their identity through limited discovery").

10       Indeed, in similar copyright infringement cases brought by Plaintiffs, and/or other record

11   companies, against Doe defendants for infringing copyrights over P2P networks, many courts,

12   including this Court, have granted Plaintiffs' motions for leave to take expedited discovery. See,

13   e.g., Order, Maverick Recording Co. v. Does 1-4, Case No. C-04-1135 MMC (N.D. Cal. April 28,

14   2004); Order, Arista Records LLC v. Does 1-16, No. 07-1641 LKK EFB (E.D.Cal. Aug. 23, 2007);

15   Order, Sony BMG Music Ent't v. Does 1-16, No. 07-cv-00581-BTM-AJB (S.D. Cal. Apr. 19, 2007);

16   Order, UMG Recordings, Inc. v. Does 1-2, No. CV04-0960 (RSL) (W.D. Wash. May 14, 2004);

17   Order, Loud Records, LLC v. Does 1-5, No. CV-04-0134-RHW (E.D. Wash. May 10, 2004); Order,

18   London-Sire Records, Inc. v. Does 1-4, No. CV 04-1962 ABC (AJWx) (C.D. Cal. Apr. 2, 2004);

19   Order, Interscope Records. v. Does 1-4, No. CV-04-131 TUC-JM (D. Ariz. Mar. 25, 2004) (true and

20   correct copies of these Orders are attached hereto as **Exhibit B**). This Court should not depart from

21   its well-reasoned decisions, or the well-reasoned decisions of other courts that have addressed this

22   issue directly.

23       Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference

24   where the party establishes "good cause" for such discovery. See UMG Recordings, Inc., 2006 U.S.

25   DIST. LEXIS 32821 (N.D. Cal. Mar. 6, 2000); Entertainment Tech. Corp. v. Walt Disney

26   Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (applying a

27   reasonableness standard); Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D.

28   Cal. 2002); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz.

4

1    2001) (applying a good cause standard); Energetics Sys. Corp. v. Advanced Cerametrics, No. 95-

2    7956, 1996 U.S. Dist. LEXIS 2830, *5-6 (E.D. Pa. March 8, 1996) (good cause standard satisfied

3    where the moving party had asserted claims of infringement). Plaintiffs easily have met this

4    standard.

5         First, good cause exists where, as here, the complaint alleges claims of infringement. See

6    Interscope Records v. Does 1-14, No. 5:07-4107-RDR, 2007 U.S. Dist. LEXIS 73627, *3 (D. Kan.

7    Oct. 1, 2007) (citations omitted) ("Good cause can exist in cases involving claims of infringement

8    and unfair competition); Energetics Sys. Corp., 1996 U.S. Dist. LEXIS 2830 at *5-6 (good cause

9    standard satisfied where the moving party had asserted claims of infringement); see also Semitool,

10   208 F.R.D. at 276; Benham Jewelry Corp. v. Aron Basha Corp., No. 97 CIV 3841, 1997 WL

11   639037, at *20 (S.D.N.Y. Oct. 14, 1997). This is not surprising, since such claims necessarily

12   involve irreparable harm to the plaintiff. 4 Melville B. Nimmer & David Nimmer, Nimmer On

13   Copyright § 14.06[A], at 14-103 (2003); see also Taylor Corp. v. Four Seasons Greetings, LLC, 315

14   F.3d 1034, 1042 (8th Cir. 2003); Health Ins. Ass'n of Am. v. Novelli, 211 F. Supp. 2d 23, 28

15   (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when

16   his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted);

17   ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 66 (2d Cir. 1996).

18        Second, good cause exists here because there is very real danger that electronic evidence may

19   be destroyed and the ISP may not long preserve the information that Plaintiffs seek. As discussed

20   above, computer evidence by its very nature is subject to being overwritten. Linares Decl., ¶ 24.

21   Evidence stored on Defendant's computer may be lost as a result of any delay. Moreover, ISPs

22   typically retain user activity logs containing the information sought for only a limited period of time

23   before erasing or overwriting the data. Linares Decl., ¶ 25. If that information is erased, Plaintiffs

24   will have *no* ability to identify the Defendant, and thus will be unable to pursue their lawsuit to

25   protect their copyrighted works. Id. Where "physical evidence may be consumed or destroyed with

26   the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for

27   expedited discovery exists. Interscope Records, 2007 U.S. Dist. LEXIS 73627 at *3 (citation

28   omitted); see also Metal Bldg. Components, L.P. v. Caperton, CIV-04-1256 MV/DJS, 2004 U.S.

5

1   Dist. LEXIS 28854, \*10-11 (D.N.M. April 2, 2004) ("Good cause is frequently found . . . when
2   physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging
3   one or more parties to the litigation.") (citation omitted); Pod-Ners, LLC v. Northern Feed & Bean,
4   204 F.R.D. 675, 676 (D. Colo. 2002) (allowing the plaintiff expedited discovery to inspect "beans"
5   in the defendant's possession because the beans might no longer be available for inspection if
6   discovery proceeded in the normal course).

7         Third, good cause exists because the narrowly tailored discovery requests do not exceed the
8   minimum information required to advance this lawsuit and will not prejudice Defendant. See
9   Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in
10  consideration of the administration of justice, outweighs the prejudice to the responding party.").
11  Plaintiffs seek immediate discovery to identify the Defendant; information that may be erased very
12  soon. Plaintiffs (who continue to be harmed by Defendant's copyright infringement, Linares Decl., ¶
13  9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding
14  discovery) because there is no known defendant with whom to confer (and thus, no conference is
15  possible). There is no prejudice to Defendant because Plaintiffs merely seek information to identify
16  Defendant and to serve him or her, and Plaintiffs agree to use the information disclosed pursuant to
17  their subpoenas only for the purpose of protecting their rights under the copyright laws. See Metal
18  Bldg. Components, L.P., 2004 U.S. Dist. LEXIS 28854 at \*12 (where "the requested discovery is
19  relevant and will be produced in the normal course of discovery," the court was "unable to discern
20  any prejudice or hardship to Defendant" if discovery is conducted "on an expedited basis.").

21        Fourth, courts regularly grant expedited discovery where such discovery will "substantially
22  contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277. Here, the present lawsuit
23  cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other
24  information Plaintiffs can obtain about Defendant without discovery from the ISP. As shown by the
25  Declaration of Carlos Linares, Plaintiffs already have developed a substantial case on the merits
26  against the infringer. Plaintiffs' complaint alleges a *prima facie* claim for direct copyright
27  infringement. Plaintiffs have alleged that they own and have registered the copyrights in the works
28  at issue, and that Defendant copied or distributed those copyrighted works without Plaintiffs'

6

1    authorization. See Complaint. These allegations state a claim of copyright infringement. Nimmer

2    On Copyright § 31.01, at 31-3 to 31-7; Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340,

3    361 (1991). In addition, Plaintiffs have copies of a sample of several of the sound recordings that

4    Defendant illegally distributed to the public and have evidence of every file that Defendant illegally

5    distributed to the public. See Complaint Ex. A; Linares Decl., ¶¶ 18-19. This more complete list

6    shows 1147 files, many of them sound recordings (MP3 files) that are owned by, or exclusively

7    licensed to, Plaintiffs. See Linares Decl., ¶ 19. Plaintiffs believe that virtually all of the sound

8    recordings have been downloaded and/or distributed to the public without permission or consent of

9    the respective copyright holders. Id. Absent limited, immediate discovery, Plaintiffs will be unable

10    to obtain redress for any of this infringement.

11    Finally, Plaintiffs request that the Court make clear that UC Santa Cruz is authorized to

12    respond to the subpoena pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C.

13    1232g ( "FERPA"). Though FERPA generally prohibits disclosure of certain records by federally-

14    funded educational institutions, it *expressly* provides that information can be disclosed pursuant to

15    court order. *See* 20 U.S.C. § 1232g(b)(2)(B). While Plaintiffs do not believe FERPA prevents the

16    disclosure of the information requested in the subpoena,[4] universities and colleges have expressed

17    concern about their obligations under FERPA, and some have taken the position that a court order is

18    required before they will disclose subscriber information. Hence, Plaintiffs seek an appropriate

19    order explicitly authorizing UC Santa Cruz to comply with the subpoena under 20 U.S.C. §

20    1232g(b)(2)(B).

21    If the Court grants this Application, Plaintiffs will serve a subpoena on UC Santa Cruz

22    requesting documents that identify the true name and other information about the Defendant within

23    15 business days. UC Santa Cruz then will be able to notify its subscribers that this information is

24    being sought, and Defendant will be able to raise any objections before this Court in the form of a

25

26

27    [4] Plaintiffs do not concede that FERPA prevents University of California, Santa Cruz, from

28    disclosing the type of information being requested by Plaintiffs, but believe that a properly framed
      court order will make resolution of that issue unnecessary.

7

1    motion to quash prior to the return date of the subpoena. Thus, to the extent that Defendant wishes

2    to object, he or she will be able to do so.

3    **IV.    CONCLUSION**

4        For the foregoing reasons, the Court should grant the Application and enter an Order

5    substantially in the form of the attached Proposed Order.

6

7

8    Dated:    August 21, 2008              HOLME ROBERTS & OWEN LLP

9

10                                    By    _____

11                                          DAWNIEL L ZAVALA
                                            Attorney for Plaintiffs
12                                          SONY BMG MUSIC ENTERTAINMENT; UMG
                                            RECORDINGS, INC.; WARNER BROS.
13                                          RECORDS INC.; and BMG MUSIC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY
Case No. _____
#39479 v1

1  Dawniell Zavala (State Bar No. 253130)
   HOLME ROBERTS & OWEN LLP
2  560 Mission Street, 25th Floor
   San Francisco, CA  94105-2994
3  Telephone:  (415) 268-2000
   Facsimile:   (415) 268-1999
4  E-mail: dawniell.zavala@hro.com

5  Attorney for Plaintiffs
   SONY BMG MUSIC ENTERTAINMENT;
6  UMG RECORDINGS, INC.; WARNER BROS.
   RECORDS INC.; and BMG MUSIC
7

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  SONY BMG MUSIC ENTERTAINMENT, a          Case No. _____
    Delaware general partnership; UMG
12  RECORDINGS, INC., a Delaware corporation;  **DECLARATION OF CARLOS**
    WARNER BROS. RECORDS INC., a Delaware      **LINARES IN SUPPORT OF**
13  corporation; and BMG MUSIC, a New York     **APPLICATION FOR LEAVE TO**
    general partnership,,                      **TAKE IMMEDIATE DISCOVERY**
14
            Plaintiff,
15        v.

16  JOHN DOE,

17          Defendant.

18

19

20

21

22

23

24

25

26

27

28

1    I, Carlos Linares, have personal knowledge of the facts stated below and, under
2    penalty of perjury, hereby declare:

3    1.    I am an attorney and Vice President, Anti-Piracy Legal Affairs for the
4    Recording Industry Association of America, Inc. ("RIAA"), where I have been employed for
5    over six years. My office is located at 1025 F Street, N.W., 10th Floor, Washington, DC 20004.
6    I submit this Declaration in support of Plaintiffs' Application for Leave to Take Immediate
7    Discovery.

8    2.    As Vice President, Anti-Piracy Legal Affairs, I am responsible for
9    evaluating and contributing to online strategies for the RIAA and its member record companies
10   who are Plaintiffs in this action, including oversight of the investigations into online
11   infringement of copyrighted sound recordings. As such, this Declaration is based on my
12   personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and
13   accuracy.

14   **The RIAA's Role in Protecting Its Member Recording Industry Companies From Copyright Infringement**

15   3.    The RIAA is a not-for-profit trade association whose member record
16   companies create, manufacture, and/or distribute approximately ninety percent of all legitimate
17   sound recordings produced and sold in the United States. The RIAA's member record
18   companies comprise the most vibrant national music industry in the world. A critical part of the
19   RIAA's mission is to assist its member companies in protecting their intellectual property in the
20   United States and in fighting against online and other forms of piracy. All of the Plaintiffs in this
21   action are members of the RIAA.

22   4.    As part of that process, the RIAA, on behalf of its members, retains a
23   variety of services from outside vendors to assist with its investigation of the unauthorized
24   reproduction and distribution of copyrighted sound recordings online.

25   **The Internet and Music Piracy**

26   5.    The Internet is a vast collection of interconnected computers and computer
27   networks that communicate with each other. It allows hundreds of millions of people around the

28

world to communicate freely and easily and to exchange ideas and information, including academic research, literary works, financial data, music, movies, graphics, and an unending and ever-changing array of other data. Unfortunately, the Internet also has afforded opportunities for the wide-scale piracy of copyrighted sound recordings and musical compositions. Once a sound recording has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in sound quality.

6.    Much of the unlawful distribution of copyrighted sound recordings over the Internet occurs via "peer-to-peer" ("P2P") file copying networks or so-called online media distribution systems. The most notorious example of such a system was Napster, which was enjoined by a federal court. Notwithstanding the court's decision enjoining Napster, similar online media distribution systems emerged and attempted to capitalize on the growing illegal market that Napster fostered. These include KaZaA, eDonkey, iMesh, Ares, BitTorrent, DirectConnect, and Gnutella, among others. To this day, some P2P networks continue to operate and to facilitate widespread copyright piracy. At any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material.

7.    P2P networks, at least in their most popular form, refer to computer systems or processes that enable Internet users to: (1) index files (including audio recordings) into a share directory on a computer that are then searched for and transferred to other users; (2) search for files stored on other users' computers; (3) transfer exact copies of files from one computer to another via the Internet; and (4) allow users to further distribute the files to other users. P2P networks enable users who otherwise would have no connection with, or knowledge of, each other to offer to each other for distribution and copying files off of their personal computers, to provide a sophisticated search mechanism by which users can locate these files for downloading, and to provide a means of effecting downloads.

8.    The major record companies generally have not authorized their copyrighted sound recordings to be copied or distributed in unsecured formats by means of P2P

2

1   networks. Thus, the vast majority of the content that is copied and distributed on P2P networks

2   is unauthorized by the copyright owner – that is, the distribution violates the copyright laws.

3        9.    The scope of online piracy of copyrighted works cannot be

4   underestimated. The RIAA member companies lose significant revenues on an annual basis due

5   to the millions of unauthorized downloads and uploads of well-known recordings that are

6   distributed on P2P networks by infringers who, in virtually all cases, have the ability to maintain

7   their anonymity to all but the Internet Service Provider ("ISP") they use to supply them with

8   access to the Internet.

9        10.   The persons who commit infringements by using the P2P networks are, by

10  and large, anonymous to Plaintiffs. A person who logs on to a P2P network is free to use any

11  alias (or computer name) whatsoever, without revealing his or her true identity to other users.

12  Thus, Plaintiffs can observe the infringement occurring on the Internet, but do not know the true

    names or mailing addresses of those individuals who are committing the infringement.

13
                              **The RIAA's Identification of Copyright Infringers**

14       11.   In order to assist its members in combating copyright piracy, the RIAA

15  retained a third party, MediaSentry, Inc. ("MediaSentry"), to conduct searches of the Internet, as

16  well as file-copying services, for infringing copies of sound recordings whose copyrights are

17  owned by RIAA members. A search can be as simple as logging onto a P2P network and

18  examining files being distributed by others logged onto the network. In gathering evidence of

19  copyright infringement, MediaSentry uses the same functionalities that are built into P2P

20  programs that any user of the software can use on the network.

21       12.   Users of P2P networks who distribute files over a network can be

22  identified by using Internet Protocol ("IP") addresses because the unique IP address of the

23  computer offering the files for distribution can be captured by another user during a search or a

24  file transfer. Users of P2P networks can be identified by their IP addresses because each

25  computer or network device (such as a router) that connects to a P2P network must have a

26  unique IP address within the Internet to deliver files from one computer or network device to

27  another. Two computers cannot effectively function if they are connected to the Internet with the

28
                                            3

1  same IP address at the same time. In some cases, more than one computer can access the internet
2  over a single IP address by using network address translation, in which cases the computer port
3  being used provides further identification of the computer engaged in the on-line
4  communication. This is analogous to the telephone system where each location has a unique
5  number (and the port acts much like a specific telephone extension off the main switch board).
6  For example, in a particular home, there may be three or four different telephones, but only one
7  call can be placed at a time to or from that home. Each computer or network device is connected
8  to a network that is administered by an organization like a business, ISP, college, or university.
9  Each network, in turn, is analogous to an area code. The network provider maintains a log of IP
10 address allocations. An IP address can be associated with an organization such as an ISP,
11 business, college, or university, and that organization can identify the P2P network user
   associated with the specified IP address.

12          13.     MediaSentry finds individuals using P2P networks to share music files
13 over the Internet. Just as any other user on the same P2P networks as these individuals would be
14 able to do, MediaSentry is able to detect the infringement of copyrighted works and identify the
15 users' IP addresses because the P2P software being used by those individuals has file-sharing
16 features enabled.

17          14.     For each suspected infringer, MediaSentry downloads a number of the
18 music files that the individual is offering to other users on the P2P network. Those music files
19 for each such individual are listed in Exhibit A to the Complaint. MediaSentry assigns an
20 identification number to each individual for which it detects copyright infringement and gathers
21 additional evidence for each individual, such as metadata accompanying each file being
22 disseminated that demonstrates that the user is engaged in copyright infringement. That
23 evidence includes download data files that show for each music file the source IP address, user
24 logs that include a complete listing of all files in the individual's share folder at the time, and
25 additional data that track the movement of the files through the Internet.

26          15.     After MediaSentry collects the evidence of infringement, the RIAA
27 engages in a painstaking process to verify whether each individual was infringing. That process

28

                                                4

1    relies on human review of evidence supporting the allegation of infringement. For each
2    suspected infringer, the RIAA reviews a listing of the music files that the user has offered for
3    download by others from his or her computer in order to determine whether they appear to be
4    copyrighted sound recordings. The RIAA also listens to the downloaded music files from these
5    users in order to confirm that they are, indeed, copies of sound recordings whose copyrights are
6    owned by RIAA members. Exhibit A to the Complaint lists the details of these downloaded
7    music files. In my role as Vice President, Anti-Piracy, I provide oversight over the review of the
8    lists contained in Exhibit A to the Complaint and hereby attest to the veracity of those lists. The
9    RIAA also reviews the other evidence collected by MediaSentry.

### The Subpoena Process to Identify Copyright Infringers

10

11    16.    The RIAA frequently has used the subpoena processes of Federal Rule of
Civil Procedure 45 to obtain the names of infringers from ISPs. The RIAA typically has
12    included in their subpoenas to ISPs an IP address and a date and time on which the RIAA,
13    through its agent, MediaSentry, observed use of the IP address in connection with allegedly
14    infringing activity. In some instances, providing the IP address alone to the ISP has been enough
15    to enable the ISP to identify the infringer. Providing the date and time further assists some ISPs
16    in identifying infringers, especially ISPs that use "dynamic IP addressing" such that a single
17    computer may be assigned different IP addresses at different times, including, for example, each
18    time it logs into the Internet.[1] Some ISPs also ask for the computer port information to further
19    identify the infringer. Once provided with the IP address, plus the date and time of the infringing
20    activity, the infringer's ISP can typically identify the computer from which the infringement
21    occurred (and the name and address of the subscriber that controls that computer), sometimes
22    within a matter of minutes.

23    17.    Since 1998, the RIAA and others have used subpoenas thousands of times
24    to learn the names, addresses, telephone numbers, and e-mail addresses of infringers for the
25    purpose of bringing legal actions against those infringers.

26    _____
27    [1] ISPs own or are assigned certain blocks or ranges of IP addresses. An ISP assigns a
particular IP address in its block or range to a subscriber when that subscriber goes "online."

28

5

1

**The RIAA's Identification of the Infringers in This Case**

2        18.    In the ordinary course of investigating online copyright infringement, the

3    RIAA became aware that Defendant was distributing files to others on various P2P networks.

4    The user-defined author and title of the files being distributed by Defendant suggested that many

5    were copyrighted sound recordings being disseminated without the authorization of the copyright

6    owners. The RIAA downloaded and listened to a representative sample of the music files being

7    distributed by Defendant and was able to confirm that the files Defendant was distributing were

8    illegal copies of sound recordings whose copyrights are owned by RIAA members. The RIAA

9    also recorded the time and date at which the infringing activity was observed and the IP address

10   assigned to Defendant at the time. See Complaint Exhibit A. The RIAA could not, however,

11   determine the physical location of the users or their identities. The RIAA could determine that

12   Defendant was using University of California, Santa Cruz internet service to distribute the

     copyrighted files.

13       19.    The RIAA also has collected for Defendant a list of the files Defendant

14   was distributing to the public. The list shows 1147 files, many of which are sound recording

15   (MP3) files that are owned by, or exclusively licensed to, Plaintiffs. Because of the voluminous

16   nature of the list, and in an effort not to overburden the Court with paper, I have not attached the

17   list to this Declaration. The list will be made available to the Court upon request. Exhibit A to

18   the Complaint includes the username of the infringer if that was available, the identification

19   number assigned by MediaSentry for the Defendant, and the number of audio files that were

20   being shared by Defendant at the time that the RIAA's agent, MediaSentry, observed the

21   infringing activity.

22

**The Importance of Expedited Discovery in This Case**

23       20.    Obtaining the identity of copyright infringers on an expedited basis is

24   critical to stopping the piracy of the RIAA members' copyrighted works.

25       21.    First, every day that copyrighted material is disseminated without the

26   authorization of the copyright owner, the copyright owner is economically harmed. Prompt

27

28

6

1   identification of infringers is necessary in order for copyright owners to take quick action to stop
2   unlawful dissemination of their works and minimize their economic losses.

3        22.   Second, infringement often occurs with respect to sound recordings that
4   have not yet been distributed publicly. Such infringement inflicts great harm on the initial
5   market for new works. New recordings generally earn a significant portion of their revenue
6   when they are first released, and copyright piracy during a recording's pre-release or early
7   release period therefore deprives copyright owners of an important opportunity to reap the
8   benefits of their labor.

9        23.   Third, without expedited discovery, Plaintiffs have no way of serving
10   Defendant with the complaint and summons in this case. Infringement occurs without name tags
11   so Plaintiffs do not have Defendant's name or address, nor do they have an e-mail address for
    Defendant.

12        24.   Fourth, computer evidence by its very nature is subject to being
13   overwritten. At times, Plaintiffs have sought evidence from defendants' computers only to find
14   that the evidence of infringement was destroyed (intentionally or unintentionally). Expedited
15   discovery is critical to allow Plaintiffs to put Defendants on notice of the need to preserve the
16   electronic evidence and avoid the loss of evidence.

17        25.   Fifth, ISPs have different policies pertaining to the length of time they
18   preserve "logs" which identify their users. ISPs keep log files of their user activities for only
19   limited periods of time – which can range from as short as a few days, to a few months – before
20   erasing or overwriting the data they maintain. If an ISP does not respond expeditiously to a
21   discovery request, the identification information in the ISP's logs may be erased, making it
22   impossible for the ISP to determine the identity of the infringer and eliminating the copyright
23   owner's ability to take action to stop the infringement. The RIAA notifies the ISPs when it has
24   identified infringement for which it will seek identifying information and requests the ISPs to
25   preserve the information. In most cases the ISPs preserve at least some of the information
26   necessary to identify the infringer, but not always. Some ISPs have indicated they will preserve
    the information for a limited time.
27

28
        7

1    I declare under penalty of perjury under the laws of the United States that the foregoing is
2    true and correct.
3    Executed on _August 8_, 2008 in Washington, D.C.

4
5    _____
6    Carlos Linares
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    JEFFREY G. KNOWLES (State Bar # 129754)
     JULIA D. GREER (State Bar # 200479)
2    ZUZANA J. SVIHRA (State Bar # 208671)
     COBLENTZ, PATCH, DUFFY & BASS, LLP
3    One Ferry Building, Suite 200
     San Francisco, California 94111
4    Telephone: (415) 391-4800
     Facsimile: (415) 989-1663
5
     Attorneys for Plaintiffs
6    MAVERICK RECORDING CO.; WARNER BROS.
     RECORDS INC.; ARISTA RECORDS, INC.; VIRGIN
7    RECORDS AMERICA, INC.; UMG RECORDINGS, INC.;
     INTERSCOPE RECORDS; BMG MUSIC; SONY MUSIC
8    ENTERTAINMENT INC.; ATLANTIC RECORDING
     CORP.; MOTOWN RECORD COMPANY, L.P.; and
9    CAPITOL RECORDS, INC.

10                      UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13   MAVERICK RECORDING COMPANY, a          CASE NO. C-04-1135 MMC
     California joint venture; WARNER BROS.
14   RECORDS INC., a Delaware corporation;   [PROPOSED] ORDER GRANTING
     ARISTA RECORDS, INC., a Delaware        PLAINTIFFS' MISCELLANEOUS
15   corporation; VIRGIN RECORDS AMERICA,    ADMINISTRATIVE REQUEST FOR
     INC., a California corporation; UMG     LEAVE TO TAKE IMMEDIATE
16   RECORDINGS, INC., a Delaware            DISCOVERY
     corporation; INTERSCOPE RECORDS, a
17   California general partnership; BMG MUSIC,
     a New York general partnership; SONY
18   MUSIC ENTERTAINMENT INC., a
     Delaware corporation; ATLANTIC
19   RECORDING CORPORATION, a Delaware
     corporation; MOTOWN RECORD
20   COMPANY, L.P., a California limited
     partnership; and CAPITOL RECORDS, INC.,
21   a Delaware corporation,

22              Plaintiffs,

23         vs.

24   DOES 1 - 4,

25              Defendants.

26

27

28

_____
                                        [PROPOSED] ORDER

*(left margin vertical text)* COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200, san francisco, ca 94111-4213
(415) 391-4800  •  (415) 989-1663

1    Upon the Miscellaneous Administrative Request of Plaintiffs For Leave To Take

2   Immediate Discovery, the Declaration of Jonathan Whitehead and the exhibit thereto, Plaintiffs'

3   Request for Judicial Notice, and the Declaration of Zuzana J. Svihra, it is hereby:

4    ORDERED that Plaintiffs may serve immediate discovery on the University of

5   California, Berkeley to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena

6   that seeks information sufficient to identify each Doe Defendant, including the name, address,

7   telephone number, e-mail address, and Media Access Control addresses for each Defendant.

8    IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

9   response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

10  Plaintiffs' rights under the Copyright Act.

11    Without such discovery, Plaintiffs cannot identify the Doe Defendants, and thus

12  cannot pursue their lawsuit to protect their copyrighted works from infringement.

13

14  Dated:  April 28, 2004              James Larson U.S. Magistrate Judge
                                        United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Matthew Franklin Jaksa (CA State Bar No. 248072)
   HOLME ROBERTS & OWEN LLP
2  560 Mission Street, 25th Floor
3  San Francisco, CA  94105-2994
   Telephone:  (415) 268-2000
4  Facsimile:  (415) 268-1999
   Email:    matt.jaksa@hro.com
5
6  Attorneys for Plaintiffs,
   ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION;
7  BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA
   ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE
8  RECORDS LLC; MAVERICK RECORDING COMPANY; MOTOWN
   RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG
9  MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN
   RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.
10
11              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA

12 | ARISTA RECORDS LLC, a Delaware limited liability | CASE NO. 07-1641 LKK EFB
   company; ATLANTIC RECORDING
13 | CORPORATION, a Delaware corporation; BMG | **ORDER GRANTING EX PARTE**
   MUSIC, a New York general partnership; CAPITOL | **APPLICATION FOR LEAVE TO TAKE**
14 | RECORDS, INC., a Delaware corporation; ELEKTRA | **IMMEDIATE DISCOVERY**
   ENTERTAINMENT GROUP INC., a Delaware
15 | corporation; INTERSCOPE RECORDS, a California
   general partnership; LAFACE RECORDS LLC, a
16 | Delaware limited liability company; MAVERICK
   RECORDING COMPANY, a California joint venture;
17 | MOTOWN RECORD COMPANY, L.P., a California
   limited partnership; PRIORITY RECORDS LLC, a
18 | California limited liability company; SONY BMG
   MUSIC ENTERTAINMENT, a Delaware general
19 | partnership; UMG RECORDINGS, INC., a Delaware
   corporation; VIRGIN RECORDS AMERICA, INC., a
20 | California corporation; and WARNER BROS.
   RECORDS INC., a Delaware corporation,
21 |                     Plaintiffs,
22
23               v.
24 | DOES 1-16,
25 |              Defendants.
26
27
28

   [Proposed] Order Granting Ex Parte Application for Leave to Take Immediate Discovery
   Case No.
   #31640 v1

1         Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery,

2 the Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby

3 ORDERED that Plaintiffs may serve immediate discovery on University of California, Davis to

4 obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that

5 identify each Doe Defendant, including the name, current (and permanent) addresses and telephone

6 numbers, e-mail addresses, and Media Access Control addresses for each Defendant.

7         Although parties must generally meet and confer prior to seeking expedited

8 discovery, that requirement may be dispensed if good cause is shown. *See* Fed. R. Civ. P. 26(d);

9 *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Here, the

10 plaintiffs have presented evidence that the subpoena is necessary to identify the defendants, serve

11 them with the complaint and summons, and prosecute their claims of copyright infringement. *See*

12 *Gillespie v. Civletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants

13 will not be known prior to the filing of a complaint . . . . the plaintiff should be given an opportunity

14 through discovery to identify the unknown defendants, unless it is clear that discovery would not

15 uncover the identities, or that the complaint would be dismissed on other grounds."). Plaintiffs have

16 further averred that records kept by internet service providers ("ISP") such as the University of

17 California, Davis, are regularly destroyed, sometimes on a daily or weekly basis. *See* Linares

18 Declaration, at ¶ 24. Based on the foregoing, the court finds that plaintiffs have demonstrated good

19 cause for the expedited discovery.

20         The disclosure of this information is ordered pursuant to 20 U.S.C. § 1232g(b)(2)(B).

21 Consistent with that provision, if and when the University of California, Davis is served with a

22 subpoena, it shall, within five business days, give written notice to the subscribers whose identities

23 are to be disclosed in response to the subpoena. Such written notice may be achieved by messages

24 sent via electronic mail. If the University of California, Davis, and/or any defendant wishes to move

25 to quash the subpoena, they shall do so before the return date of the subpoena.

26

27

28

1

1    IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

2  response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

3  Plaintiffs' rights under the Copyright Act.

4

5  Dated:  _____ August 23, 2007. _____

6                                         EDMUND F. BRENNAN

7                                         UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

[Proposed] Order Granting Ex Parte Application for Leave to Take Immediate Discovery
Case No.
#31640 v1

FILED

2007 APR 23 PM 1: 19

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY____RM____DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SONY BMG MUSIC ENTERTAINMENT, a
Delaware general partnership; UMG
RECORDINGS, INC., a Delaware corporation;
ARISTA RECORDS LLC, a Delaware limited
liability company; CAPITOL RECORDS, INC., a
Delaware corporation; WARNER BROS.
RECORDS INC., a Delaware corporation;
INTERSCOPE RECORDS, a California general
partnership; PRIORITY RECORDS LLC, a
California limited liability company; ATLANTIC
RECORDING CORPORATION, a Delaware
corporation; FONOVISA, INC., a California
corporation; MAVERICK RECORDING
COMPANY, a California joint venture; MOTOWN
RECORD COMPANY, L.P., a California limited
partnership; ELEKTRA ENTERTAINMENT
GROUP INC., a Delaware corporation; BMG
MUSIC, a New York general partnership; VIRGIN
RECORDS AMERICA, INC., a California
corporation; and LAFACE RECORDS LLC, a
Delaware limited liability company,

       Plaintiff,

  v.

DOES 1 - 16,

       Defendants.

Case **07CV 0581 BTM    AJB**

[PROPOSED] **ORDER GRANTING
PLAINTIFFS'** *EX PARTE*
**APPLICATION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY**

1

1   Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery, the

2 Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby:

3   ORDERED that Plaintiffs may serve immediate discovery on SBC Internet Services, Inc. to

4 obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that

5 identify each Doe Defendant, including the name, current (and permanent) addresses and telephone

6 numbers, e-mail addresses, and Media Access Control addresses for each Defendant. The disclosure

7 of this information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).

8   IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the

9 Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under

10 the Copyright Act.

11

12 DATED: *4-19-07*   By: _____
              United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04-CV-00960-IFP

1
2
3
4
5
6
7  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
8

9  | UMG RECORDINGS, INC., a Delaware | No. C04-0960 (c)-L |
   | corporation; ATLANTIC RECORDING | |
10 | CORPORATION, a Delaware corporation; | [PROPOSED] ORDER GRANTING |
   | WARNER BROS. RECORDS INC., a | PLAINTIFFS' MOTION FOR LEAVE TO |
11 | Delaware corporation; SONY MUSIC | TAKE IMMEDIATE DISCOVERY |
   | ENTERTAINMENT INC., a Delaware | |
12 | corporation; BMG MUSIC, a New York | |
   | general partnership; and VIRGIN | |
13 | RECORDS AMERICA, INC., a California | |
   | corporation, | |
14 | | |
   | Plaintiffs, | |
15 | | |
   | v. | |
16 | | |
   | DOES 1 - 2, | |
17 | | |
   | Defendants. | |
18

19     Upon the Motion of Plaintiffs for Leave to Take Immediate Discovery and the

20  supporting Memorandum of Law, and the declaration of Jonathan Whitehead and the

21  exhibit thereto, it is hereby:

22     ORDERED that Plaintiffs may serve immediate discovery on Microsoft Corporation

23  to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks

24  information sufficient to identify each Doe Defendant, including the name, address,

25  telephone number, e-mail address, and Media Access Control addresses for each Defendant.

26

YARMUTH WILSON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

1    IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

2   response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of

3   protecting Plaintiffs' rights under the Copyright Act.

4

5   Dated: _____May 14, 2004_____        _____

6                                            United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 1 0 2004

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7  LOUD RECORDS, LLC, a
8  Delaware corporation; WARNER
   BROS. RECORDS INC., a
9  Delaware corporation; ATLANTIC
   RECORDING CORPORATION, a
10 Delaware corporation; VIRGIN
   RECORDS AMERICA, INC., a
11 California corporation; PRIORITY
   RECORDS LLC, a California
12 limited liability company;
   ELEKTRA ENTERTAINMENT
13 GROUP INC., a Delaware
   corporation; BMG RECORDINGS,
14 INC, a Delaware corporation;
   ARISTA RECORDS, INC., a
15 Delaware corporation; BMG
   MUSIC, a New York general
16 partnership; SONY MUSIC
   ENTERTAINMENT INC., a
17 Delaware corporation; MAVERICK
   RECORDING COMPANY, a
18 California joint venture; and
   CAPITOL RECORDS, INC., a
19 Delaware corporation,

20          Plaintiffs,
            v.
21
   DOES 1-5,
22
23          Defendants.

NO.  CV-04-0134-RHW

**ORDER GRANTING PLAINTIFFS'
MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY**

24
25      Before the Court is Plaintiffs' Motion for Leave to Take Immediate
26 Discovery (Ct. Rec. 7).  The Plaintiffs, members of the Recording Industry
27 Association of America, Inc. ("RIAA"), have filed a complaint alleging that DOES
28

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 1

1   1-5 illegally engaged in uploading and downloading copyrighted recordings
2   through www.KaZaA.com, a peer to peer ("P2P") internet service (Ct. Rec. 1).
3   While Plaintiffs are unable to identify the Does, they collected records of
4   Defendants' Internet Protocol ("IP") address, the times the downloads or uploads
5   took place, and information regarding the specific recordings that were
6   downloaded or uploaded. The Plaintiffs were able to ascertain from Defendants'
7   IP addresses that they were utilizing Gonzaga University as their Internet Service
8   Provider ("ISP"). Plaintiffs seek statutory damages under 17 U.S.C. § 504(c),
9   attorneys fees and costs pursuant to 17 U.S.C. § 505, and injunctive relief under
10  17 U.S.C. §§ 502 and 503.
11          In their Motion for Leave to Take Immediate Discovery, the Plaintiffs seek
12  leave to serve Gonzaga University, the ISP for Does 1-5, with a Rule 45 Subpoena
13  Duces Tecum, requiring Gonzaga University to reveal the Defendant's names,
14  addresses, email addresses, telephone number, and Media Access Control
15  ("MAC") addresses.
16          The Ninth Circuit has held that "where the identity of alleged defendants
17  will not be known prior to the filing of a complaint . . . . the plaintiff should be
18  given an opportunity through discovery to identify the unknown defendants,
19  unless it is clear that discovery would not uncover the identities, or that the
20  complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d
21  637, 642 (9th Cir. 1980). Presumably, the discovery device anticipated by this
22  ruling was Rule 45, under which a party may compel a nonparty to produce
23  documents or other materials that could reveal the identities. *See Pennwalt Corp.*
24  *v. Durand-Wayland, Inc.*, 708 F.2d 492 (9th Cir. 1983). The Court finds that this
25  instance presents the very situation indicated by *Gillespie*. The Plaintiffs' case
26  relies on the disclosure of the Does' identities, and those identities are likely
27  discoverable from a third party.
28          Under Rule 26(d), Rule 45 subpoenas should not be served prior to a Rule

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 2

1  26(f) conference unless the parties can show good cause. Fed. R. Civ. P. 26(d) ("a

2  party may not seek discovery from any source before the parties have conferred as

3  required by Rule 26(f) . . . . [u]nless the court upon motion . . . . orders

4  otherwise"); *see Semitool, Inc. V. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-

5  76 (N.D. Cal. 2002). The Plaintiffs have presented compelling evidence that the

6  records kept by ISP providers of IP addresses are regularly destroyed. Thus, good

7  cause has been shown.

8      Accordingly, **IT IS ORDERED** that:

9      1.    Plaintiffs' Motion for Leave to Take Immediate Discovery (Ct. Rec.

10  7) is **GRANTED.**

11     2.    Plaintiffs are **GIVEN LEAVE** to serve immediate discovery on

12  Gonzaga University to obtain the identity of each Doe Defendant by serving a

13  Rule 45 subpoena duces tecum that seeks each Doe Defendants' name, address,

14  telephone number, email address, and Media Access Control address. As agreed

15  by Plaintiffs, this information disclosed will be used solely for the purpose of

16  protecting their rights under the copyright laws.

17     3.    Plaintiffs are **ORDERED** to review Local Rule 7.1(g)(2) regarding the

18  citation of unpublished decisions. All unpublished decisions cited to the Court

19  have been disregarded.

20     **IT IS SO ORDERED.** The District Court Executive is hereby directed to

21  enter this order and to furnish copies to counsel of record.

22     **DATED** this _10_ day of May, 2004.

23

24

25          ROBERT H. WHALEY
            United States District Judge

26

27  Q:\Civil\2004\Loud Records\Loud.immediatediscovery.order.wpd

28

   ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
   IMMEDIATE DISCOVERY * 3

Received 04/02/2004 04:__PH in 01:28 from 213 894 1815 to  on line [7]__or FAX3 * Pg 2/3
04/02/0:  FRI 17:22 FAX 213 894 1815          U.S DISTRICT COURT                          ☒002

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

### CIVIL MINUTES - GENERAL

Case No. CV 04-1962 ABC (AJWx)                    Date: April 2, 2004

Title: <u>LONDON-SIRE RECORDS, INC., et. al., v. DOES 1-4</u>

==================================================
PRESENT:

### HON. <u>ANDREW J. WISTRICH</u>, MAGISTRATE JUDGE

<u>Ysela Benavides</u>                    _____
Deputy Clerk                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:
None Present                               None Present

## ORDER REGARDING PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

Plaintiffs are thirteen record companies who have filed a lawsuit against four unnamed "doe" defendants for alleged copyright infringement. Plaintiffs filed a motion for leave to take immediate discovery on March 23, 2004. [Notice of Ex Parte Application for Leave to Take Immediate Discovery ("Notice") filed March 23, 2004]. Plaintiffs allege that defendants, using an online peer-to-peer ("P2P") media distribution system, made available for distribution, and in fact distributed, copyrighted songs without license or other authority to do so, thereby infringing plaintiffs' copyrights. [<u>See</u> Memorandum of Law in Support of Ex Parte Application For Leave to Take Immediate Discovery ("Memorandum") filed March 23, 2004, at 2]. Plaintiffs have acquired the Internet Protocol ("IP") addresses assigned to each of the four defendants on the dates and times of the infringing activity. [Memorandum 2]. Using a public database, plaintiffs determined that the subject IP addresses belong to the University of Southern California ("USC"). [Memorandum 2-3]. As an Internet Service Provider ("ISP"), USC maintains a subscriber activity log indicating which of its subscribers were assigned the IP addresses in question on the relevant dates and times. [Memorandum 3]. In plaintiffs' experience, most ISPs maintain subscriber activity logs for only a short period of time before destroying the information contained in the logs. [Memorandum 3]. From the subscriber logs, USC can use the IP addresses and temporal information provided by plaintiffs to identify the true names, street addresses, phone numbers, e-mail addresses, and Media Access Control ("MAC") addresses for each defendant. [Memorandum 3]. Plaintiffs ask this Court to allow immediate issuance of a subpoena directing USC to produce defendants' names and the other personal information described above so that plaintiffs may contact defendants in an attempt to negotiate a resolution to plaintiffs' claims, or failing that, to add defendants as named parties to this litigation.

Received 04/02/2004 04:22PM in 01:28 from 213 894 1815 to  on line [7] or FAX3 * Pg 3/3
04/02/04  FRI 17:22 FAX 213 894 1815          U.S DISTRICT COURT                          ☑003

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES--GENERAL

Generally, parties must meet and confer prior to seeking expedited discovery. See Fed. R. Civ. P. 26(f). That requirement, however, may be dispensed with if good cause is shown. See Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Plaintiffs have shown good cause. The true identities of defendants are unknown to plaintiffs, and this litigation cannot proceed without discovery of defendants' true identities. [See Memorandum 7-9].

Subject to the following qualifications, plaintiffs' ex parte application for leave to take immediate discovery is granted.

If USC wishes to file a motion to quash the subpoena or to serve objections, it must do so before the return date of the subpoena, which shall be no less than twenty-one (21) days from the date of service of the subpoena. Among other things, USC may use this time to notify the subscribers in question.

USC shall preserve any subpoenaed information or materials pending compliance with the subpoena or resolution of any timely objection or motion to quash.

Plaintiffs must serve a copy of this order on USC when they serve the subpoena.

Any information disclosed to plaintiffs in response to the Rule 45 subpoena must be used by plaintiffs solely for the purpose of protecting plaintiffs' rights under the Copyright Act as set forth in the complaint.


**IT IS SO ORDERED.**



cc:     Parties

Received 03/30/2004 09:44AM in 02:06 on line [11] for RHARRIS * Pg 2/3

```
FILED _____ .LODGED
RECEIVED _____ COPY

MAR 3 0 2004

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

1
2
3
4
5
6
7
8  | Interscope Records, et al.,
9  |                    Plaintiffs,       No. CV-04-131 TUC - JM
10 | v.
11 | Docs 1 - 4,                          **ORDER**
12 |
13 |                    Defendants.

14      Pending before the Court is the Plaintiffs' *ex parte* Motion for Leave to Take
15 Immediate Discovery [Docket No. 2]. Upon consideration of the Motion and the supporting
16 Memorandum of Law, and the declaration of Jonathan Whitehead and the exhibit attached
17 thereto, it is hereby:
18      ORDERED that Plaintiffs' Motion for Leave to Take Immediate Discovery [Docket
19 No. 2] is GRANTED;
20      IT IS FURTHER ORDERED that Plaintiffs may serve immediate discovery on the
21 University of Arizona to obtain the identity of each Doe Defendant by serving a Rule 45
22 subpoena that seeks information sufficient to identify each Doe Defendant, including the
23 name, address, telephone number, e-mail address, and Media Access Control addresses for
24 each Defendant;
25      IT IS FURTHER ORDERED that any information disclosed to Plaintiffs in response
26 to the Rule 45 subpoena shall be used by Plaintiffs solely for the purpose of protecting
27 Plaintiffs' rights under the Copyright Act as set forth in the Complaint;
28



JM

1    IT IS FURTHER ORDERED that, if and when the University of Arizona is served

2  with a subpoena, within five (5) business days thereof it shall give written notice, which can

3  include use of e-mail, to the subscribers whose identities are to be disclosed in response to

4  the subpoena. If the University of Arizona and/or any Defendant wishes to move to quash

5  the subpoena, they shall do so before the return date of the subpoena, which shall be twenty-

6  five (25) business days form the date of service;

7    IT IS FURTHER ORDERED that, if and when the University of Arizona is served

8  with a subpoena, the University of Arizona shall preserve the data and information sought

9  in the subpoena pending resolution of any timely filed motion to quash;

10    IT IS FURTHER ORDERED that counsel for Plaintiffs shall provide a copy of this

11  Order to the University of Arizona when the subpoena is served.

12    Dated this  25  day of March, 2004.

15    JACQUELINE MARSHALL

16    UNITED STATES MAGISTRATE JUDGE

2